UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROCHELLE HAYES,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:24-CV-184 JD |

### **OPINION AND ORDER**

Plaintiff Rochelle Hayes applied for disability insurance benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled in December 2019. Ms. Hayes's claims were rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that she was not disabled. The Appeals Council later denied her request for review, and Ms. Hayes now seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A.  Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. Discussion**

**(1)** *The ALJ's Decision*

Ms. Hayes filed a Title II and Title XVI application for disability insurance benefits alleging disability beginning December 2020. Her claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on August 10, 2023.

At the hearing, Ms. Hayes claimed, among other things, that due to her lumbar and knee issues, driving is very difficult for her, and she finds it hard to sit in a car or drive. (R. at 54.) She described her typical day as increasingly challenging, with difficulty walking from her room to the bathroom and needing assistance to get off the toilet. (R. at 59.) Ms. Hayes told the ALJ she can sit in a chair for only 10 to 15 minutes before needing to change positions. (R. at 59–60.) She has to use a scooter at the grocery store as she can stand for only about 15 minutes. (R. at 60.) She said she can lift no more than a pound without hurting herself. (*Id.*) She uses a knee brace for stability and sometimes relies on her fiancé for support. (R. at 61.) Recently she had been using a cane five to six times a day because of fear of falling. (R. at 67.) She has a shower chair and sometimes requires her fiancé's help to wash herself. (R. at 66.)

On September 21, 2023, the ALJ issued a decision finding that Ms. Hayes was not disabled. (R. at 33.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Ms. Hayes suffered from the following severe impairments: "panic disorder with agoraphobia, major depressive disorder single episode severe without psychotic features, post-traumatic stress disorder, type 2 diabetes, degenerative lumbar spinal stenosis, L5 right radiculopathy, complex tear of the lateral meniscus, and obesity." (R. at 26.)

At Step 4, the ALJ determined Ms. Hayes's residual functional capacity ("RFC"),[1] finding that she can

> perform light work[2] . . . except she can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently crawl. The claimant must avoid concentrated exposure to wetness and workplace hazards including dangerous machinery, moving mechanical parts, and unprotected heights. She can understand, carry out, and remember simple instructions. She is able to make judgments commensurate with functions of simple, repetitive tasks. She is limited to occasional contact with supervisors, coworkers, and the public. She is able to deal with frequent changes in a routine work setting.

(R. at 28.)

In light of this RFC, the ALJ determined that there are jobs in significant numbers in the national economy that Ms. Hayes can perform (housekeeper, inspector/hand packager, and routing clerk). (R. at 36.) The ALJ arrived at this conclusion after questioning a vocational expert ("VE") at the hearing.[3]

In her decision, the ALJ recognized that Ms. Hayes did suffer from neck, low back, and leg pain, but found that clinical evaluations showed few deficits as a result of those conditions. The ALJ noted that, in late 2019, Ms. Hayes received chiropractic treatment for low back and neck pain and visited the emergency department with worsening back pain. However, despite

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

[3] Although the vocation expert stated that a hypothetical person with Ms. Hayes's RFC could perform those jobs, she testified that no job opportunities would remain for an individual needing to elevate her legs to waist height for at least thirty minutes during the workday, exclusive of breaks and mealtimes. (R. at 71–72.)

positive straight leg raising and spinal tenderness, she exhibited normal strength, sensation, and reflexes. (R. at 29.) In early 2020, Ms. Hayes experienced low back pain radiating to her legs, limited lower extremity function, and hypoactive reflexes, but intact sensation. (*Id*.) She underwent lumbar spine surgery in March 2022, but post-surgery, she had intact motor function and sensation, and walked with a steady gait. (R. at 30.) In August 2022, Ms. Hayes had surgery to repair a left knee meniscus tear and attended physical therapy. She experienced ongoing swelling and pain affecting her gait mechanics and standing. By December 2022, Ms. Hayes reported popping and clicking in her left knee and pain extending to her left hip, yet the knee was stable, and she was bearing full weight. (*Id.*)

In evaluating the medical opinions, the ALJ reviewed Exhibit 8F, as well as the opinions of a physical therapist and state agency medical consultants. She also examined a check-marked form from a medical provider she could not identify.

Exhibit 8F is a sixty-six-page document containing multiple physical therapy notes and two assessments by Physician Assistant ("PA") Laniel Cua. The ALJ rejected the medical findings in Exhibit 8F as unpersuasive:

> The record contained numerous notes of short-term limitations (8F). The undersigned finds such assessments unpersuasive because the limitations applied for only limited periods and did not consider the claimant's ongoing functioning.

(R. at 31.)

The ALJ also reviewed a 2021 functional capacity evaluation but found it unpersuasive because the evaluator rated its validity at only 23%:

> The claimant had a functional capacity evaluation in May 2021 where she was observed entering the facility with a normal gait and she said with no signs of distress. She described substantial pain that appeared out of proportion and the functional capacity evaluation was deemed to be only 23% valid. Accordingly, the undersigned does not find the functional capacity evaluation findings persuasive.

6

(*Id*. (citations to the record omitted).)

Next, the ALJ found the assessments of the state agency medical consultants persuasive, noting that they reviewed the record thoroughly and that the evidence as a whole supported their conclusions:

> State Agency medical consultants found that the claimant could perform light work with frequently crawling and climbing ramps, stairs, ladders, ropes, or scaffolds. The consultants noted that the claimant had to avoid concentrated exposure to wetness and hazards. The undersigned finds such assessments persuasive in general. The consultants reviewed the record and based their conclusions on the findings therein. Moreover, the evidence as a whole confirmed that despite her physical conditions and pain, she could perform a reduced range of light work consistent with the consultants' opinions.

(*Id.*)

Finally, the ALJ was unpersuaded by a medical opinion in the form with an illegible signature:

> A form with an illegible signature indicated that the claimant could occasionally lift ten pounds to the waist, fifteen pounds to the shoulders and overhead, carry ten pounds, and push/pull five pounds. The form indicated occasional squatting, kneeling, and crawling with never stooping, bending, balancing, or climbing. The undersigned finds such opinion unpersuasive because it was unclear who signed such form. Moreover, the evidence as a whole failed to document such significant functional limitations. Indeed, while she had ongoing knee and back pain, such conditions improved to some degree with treatment. She had some strength deficits in her left leg and an antalgic gait, but generally normal strength otherwise and she continued to ambulate independently.

(R. at 31–32 (citations to the record omitted).) This form has a header of "Physical Medicine Consultants" and is signed on June 6, 2021, but the signature has all the mystery of a doctor's prescription pad:



7

Elsewhere in the record, a medical order issued by Dr. Thomas Lazoff shows his association with "Physical Medicine Consultants." The medical order is signed by Dr. Lazoff but that signature differs from the signature on the medical form issued on June 1, 2021:

*Electronically Signed by: THOMAS L LAZOFF, MD*
*[signature]*
*12/30/2020 01:15 PM*

(Medical Order, R. at 878.) A treatment note from Fort Wayne Orthopedics (dated October 7, 2021) states that Ms. Hayes "was seeing Dr. Lazoff (Physician Medical Consultants) initially after her work injury . . . and was referred here by her PCP. Dr. Lazoff had cleared her to return to work with restrictions." (Patient Clinical Interview, R. at 1075.)

In summary, the ALJ found that Ms. Hayes's alleged symptoms and limitations were only partially consistent with the evidence because despite her "ongoing back and knee pain" and "some instances of decreased strength in her left lower extremity," she had "otherwise normal strength in her extremities and she was able to [walk] independently" as well "[t]he evidence as a whole established that she could perform a reduced range of light work . . . ." (R. at 32)

**(2)** *Medical Opinions*

In her appeal, Ms. Hayes argues that the ALJ committed three reversible errors. According to Ms. Hayes, the ALJ disregarded her use of a cane; failed to properly consider her subjective allegations; and failed to consider as required by the agency's regulations the supportability and consistency of the opinion bearing illegible signature and the opinion of PA Cua. Of all the arguments, the last one is most substantive and warrants remand for further

8

consideration. As a result, the Court will address this argument, declining to reach the remaining ones, leaving them to be resolved upon remand if necessary.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

9

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The ALJ considered four medical opinions in her written decision:

- the opinions of two agency consultants, Dr. Sands and Dr. Corcoran, who reviewed Ms. Hayes's medical records, and whom she found to be persuasive;
- the opinion of a physical therapist, who found the functional capacity evaluation to be only 23% valid—a factor that led the ALJ to discount its conclusions; and
- a medical opinion bearing an illegible signature, which the ALJ discounted due to uncertainty about its authorship and because it conflicted "with the evidence as a whole."

(R. at 31.)

The ALJ did not consider PA Cua's medical opinion, dismissing it as part of "numerous notes of short-term limitations" found in Exhibit 8F. (*See id.*) The Court begins its analysis with this rejection.

PA Cua authored two medical opinions when filling out an Activity Prescription Form on behalf of Ms. Hayes.[4] On January 22, 2020, PA Cua issued a list of limitations for Ms. Hayes's work for the period of March 16 through April 7, 2020. PA Cua limited Ms. Hayes's ability to stand and walk one to three hours per day. She also opined that Ms. Hayes should seldomly (0–1 hour daily) climb stairs, twist, bend, or stoop; Ms. Hayes should never perform work from a ladder, climb ladders, or crawl; Ms. Hayes was also restricted to occasional lifting, carrying, pushing, and pulling five pounds. (R. at 825.)

---

[4] Activity Prescription Form is a form used in Washington State "to communicate the worker's: ability to work, functional capacities, physical restrictions, and treatment plan." Washington State Department of Labor & Industries, https://perma.cc/V4WJ-N25Y (last visited May 30, 2025).

On April 9, 2020, PA Cua filled out another Activity Prescription Form, applicable between April 9 and May 20, 2020. On the form, she noted the same limitations as on the previous form in Ms. Hayes's ability to stand, walk, twist, bend, stoop, squat, kneel, climb stairs, lift, carry, push and pull five pounds. She added, however, that Ms. Hayes should be allowed to alternate between standing and sitting. (R. at 827.)

The Commissioner does not dispute that PA Cua's limitations constitute medical opinions. Instead, the Commissioner offers a one-sentence argument—unsupported by any citation to case law, federal regulations, or other authority—asserting that the opinions are irrelevant because they do not address Ms. Hayes's functioning over a period of at least twelve consecutive months, as required for a disability finding. (Def.'s Br., DE 13 at 7.) This argument amounts to the Commissioner's post-hoc justification for an administrative decision that was not articulated by the ALJ, who found the opinions unpersuasive because the limitations applied to short-term periods. Such additional arguments are impermissible under the *Chenery* doctrine, which requires that the agency's decision be judged solely on the grounds articulated by the agency itself at the time of the decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Courts in the Seventh Circuit have consistently rejected post-hoc rationalizations, emphasizing that the ALJ must build an accurate and logical bridge between the evidence and her conclusions, and that reviewing courts cannot affirm decisions based on arguments or reasoning not provided by the ALJ. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (describing how the Chenery doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced" (citations omitted)).

But in any case, ALJs aren't limited to considering medical opinions that cover a period of least one year. Indeed, no time limitations are imposed in the Agency's own regulations:

> When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

20 C.F.R. § 404.1520c(a). While a medical opinion covering only a short period may indeed raise questions about supportability or consistency, the ALJ did not address either factor. Instead, she dismissed PA Cua's opinions solely because they did not span a full year, deeming them irrelevant. But if the ALJ believed that PA Cua's opinions were irrelevant, she needed to provide a reason, a logical bridge from the evidence to conclusion, that the Court could follow. Absent that bridge, the ALJ decision to discount PA Cua is not based on substantial evidence. *See Colson v. Colvin*, 120 F. Supp. 3d 778, 789 (N.D. Ill. 2015) ("Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review.").[5]

Next, the Court turns to the medical opinion with an illegible signature. The opinion states that Ms. Hayes could occasionally squat; kneel; crawl; push or pull five pounds; lift ten pounds from floor to waist; fifteen pounds from waist to shoulder; and fifteen pounds from shoulder to overhead. In addition, it states that Ms. Hayes should never stoop, bend, balance, climb, or be exposed to unprotected heights. (R. at 1114.) The ALJ rejected this opinion on the

---

[5] "The ALJ must also 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.' *See* 20 C.F.R. § 416.923. The ALJ is required to undertake this analysis because the combination of a claimant's impairments 'might well be totally disabling' even if each of the claimant's impairments standing alone is not serious." *Colson v. Colvin*, 120 F. Supp. 3d 778, 789–90 (N.D. Ill. 2015) (quoting *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011)). The ALJ made no such analysis here.

grounds that the signatory was unidentified and that "the evidence as a whole failed to document . . . significant functional limitations" as described in the opinion. The Court finds that this reasoning is insufficient and concludes that it constitutes legal error requiring remand.

Although the primary responsibility for producing medical evidence remains with the plaintiff, "[a]n ALJ [has] a duty to develop a claimant's medical record, and thus may be required to consult medical advisors where that record appears to be incomplete." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). "The duty is lower when a lawyer makes the claimant's case for him." *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023). But in any case, "the reviewing court defers to the ALJ on the question of how much evidence must be gathered. Deference comes from the practical reality that no record is "complete"—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Id.* (quotation marks and citations omitted).

In this case, the ALJ rejected a medical opinion not because she thought the record was deficient, but because the author of the opinion was not readily identifiable. As explained in Ms. Hayes's opening brief, there is a reasonable likelihood that the opinion was produced by Dr. Lazoff, as it appears to be the product of "Physical Medicine Consultants" based upon the documents header. (*See* Def.'s Br., DE 7 at 13.) But regardless of who authored the opinion, the ALJ could have easily contacted Ms. Hayes's attorney before rejecting it due to uncertainty about its source. The ALJ could have also contacted Physical Medicine Consultants. *See* 20 C.F.R. § 404.1520b(b) (stating that, among other things, the agency "may recontact [claimant's] medical source" in an attempt "to resolve the inconsistency or insufficiency" in the record). The Commissioner cites no authority, and the Court can find none either, for the proposition that an

ALJ can reject a medical opinion solely on the grounds that the signature is illegible even if other identifying information is present. This is not the case in which the claimant failed to submit evidence and is relying on the ALJ to do her work. The medical form was already in the record, and there was no clear indication that the ALJ would not recognize its origin: the header of the form was clearly identifiable, and the signature—although illegible—was present. While confirming authorship might have caused delay in issuing the decision, the ALJ should not have rejected a medical opinion over ambiguity that could have been reasonably clarified. *See Michael v. Astrue*, 543 F. Supp. 2d 860, 866 (N.D. Ill. 2008) (finding reversible error where, among other things, the ALJ gave no weight to an exhibit because the signature was illegible).

Likewise, the ALJ's finding in the alternative that "the evidence as a whole failed to document . . . significant functional limitations" does not sufficiently address the supportability and consistency factors. Without more, the ALJ's statement fails to provide a basis for a meaningful review. According to the medical form, Ms. Hayes is significantly limited in squatting, kneeling, pushing and pulling, and lifting. It also indicates that she should never stoop, bend, balance, climb, or be exposed to unprotected heights. These limitations are not reflected in the RFC. In rejecting the opinion, the ALJ did not elaborate on what "evidence as a whole" contradicted the opinion, and her lack of explanation leaves the Court to guess which portions of the evidence the ALJ specifically believed undermined the medical opinion about Ms. Hayes's capabilities.

In addition, to the extent that the ALJ did contrast the findings noted on the medical form and the evidence at large, she appears to be comparing apples to oranges. The opinion in the form addresses Ms. Hayes's ability to lift, carry, push, pull, stoop, bend, squat, kneel, crawl, balance, and climb. (R. at 1114.) Yet the ALJ contrasts these limitations with Ms. Hayes's gait

14

and ability to walk independently. (R. at 31–32.) And although the ALJ references Ms. Hayes's "generally normal strength," she does not specify which body part this refers to, nor does she explain how this finding invalidates or contradicts described in the medical opinion.

The regulations require that ALJs explain how they considered the supportability and consistency factors for a medical opinion. 20 C.F.R. § 404.1520c(b). Here, the ALJ simply provided her conclusion—that the opinion conflicted with the evidence as a whole—without giving any indication of which specific evidence she considered in reaching that determination. As other judges in this district have recognized, such general statements unsupported by further explanation are insufficient under the new regulations and require remand because they create no logical bridge between the medical evidence and the ALJ's conclusion. *See Tammy M. v. Saul*, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021) ("As this Court has set forth, the ALJ decision cannot stand under the new regulations when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence but does not explain why that evidence is inconsistent with the opinion."); *Michael v. Saul*, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (citing *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)) ("[T]he ALJ cannot merely summarize the evidence, as a whole, and then conclude that [the doctor's] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the doctor's] opinions and why.") Without any reasoning beyond the ALJ's conclusion, the Court can only guess which evidence she relied on and cannot determine whether she properly evaluated the medical opinions. The ALJ's failure to adequately address the supportability and consistency factors warrants remand. *See Tammy M.*, 2021 WL 2451907, at *7–8.

The Court recognizes the considerable burden that ALJs shoulder daily. Further, the Court recognizes that their decisions are entitled to the benefit of harmless error analysis when evaluating medical opinions. *McKinsey v. Astrue*, 641 F.3d 884, 891–92 (7th Cir. 2011) (finding harmless error when the ALJ failed to assign weight to a state agency physician's opinion); *Jason M. v. Kijakazi*, 2022 WL 2071096, *5–*6 (S.D. Ind. June 9, 2022) (applying harmless error analysis to an alleged failure to consider a medical opinion). An error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Yet the Court cannot reach such a conclusion here because PA Cua's opinions, and the opinions expressed on the medical form with the illegible signature, are central to the outcome of this case.

### D. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 10, 2025

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court